**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x        **NOT FOR PUBLICATION**
In re:                                                                        :
                                                                                    :        Chapter 11
       COLLEEN STRAWBRIDGE,                        :
                                                                                    :        Case No. 09-17208-MG
                            Debtor.     :
----------------------------------------------------------------x

**OPINION AND ORDER GRANTING MOTION TO CONVERT CASE**
**TO CASE UNDER CHAPTER 7**

*A P P E A R A N C E S:*

BELKIN BURDEN WENIG & GOLDMAN, LLP
*Attorneys for 200 E. 74 Owners Corp.*
270 Madison Avenue
New York, NY 10016
By:    S. Stewart Smith, Esq.

DIANA G. ADAMS
*United States Trustee for Region 2*
**33 Whitehall Street, 21st Floor**
**New York, NY 10004**
By:    Brian S. Masumoto, Esq.

COLLEEN STRAWBRIDGE
*Pro Se Debtor*
200 East 74th Street, Apt. 4C
New York, NY 10021
By:    Colleen Strawbridge


**MARTIN GLENN**
**United States Bankruptcy Judge**

        Colleen Strawbridge ("Debtor" or "Strawbridge") is the owner of 298 shares of

common stock of 200 E. 74 Owners Corp. (East 74 Owners Corp. Mot. for Relief from

Stay or in the Alternative to Dismiss of Convert this Proceeding (the "East 74 Motion"),

ECF # 28, Ex. E.) Debtor resides at 200 E. 74th St., Apartment 4C, New York, NY, (the

1

"Apartment") pursuant to a proprietary lease between herself and East 74 Owners Corp. ("East 74"). (East 74 Motion, Ex. C.) Debtor filed her petition for relief under chapter 11 of the Bankruptcy Code on December 8, 2009. On February 9, 2010, East 74 moved this Court for an order dismissing the Debtor's case or converting it to a case under chapter 7, or in the alternative lifting the automatic stay on the Apartment with prejudice. Strawbridge has filed a response opposing the motion. The United States Trustee supports the motion to convert the case to a case under chapter 7. For the reasons explained below, the motion to convert the case to a case under chapter 7 is granted.

## BACKGROUND

Strawbridge has litigated for the past ten years in an effort to retain the Apartment. Strawbridge filed an initial bankruptcy petition on November 13, 2002 for relief under chapter 13 of the Bankruptcy Code. (Case No. 02-15662.) East 74 contends that the chapter 13 petition was filed on the eve of a scheduled UCC sale of her shares in 200 E. 74 Owners Corp. On February 7, 2003, the Chapter 13 Trustee filed a motion to dismiss Strawbridge's case for failure to make plan payments to the Trustee. (Case No. 02-15662, ECF # 8.) The Debtor responded with an objection that seemingly argued that she had not made plan payments due to, *inter alia*, the withdrawal of her attorney in the case. Strawbridge's objection also argued that East 74 was continually harassing her with loud and ongoing renovations. Strawbridge argued that these renovations could be completed quickly and that the noise served no purpose except for harassment. (Case No. 02-15662, ECF # 9.) East 74 filed a declaration in support of the Trustee's motion, representing that Strawbridge filed her chapter 13 petition one day before a scheduled public auction of her apartment by a creditor, IndyMac Bank. In response to these

2

arguments, Judge Blackshear lifted the automatic stay so the Debtor could pursue a suit against 200 East 74 Owners Corp. for harassment. (Case No. 02-15662, ECF # 13.) Soon after Judge Blackshear's order, Indymac Bank moved to lift the automatic stay on the Apartment pursuant to sections 362(d)(1) and 362(d)(2) of the Bankruptcy Code. (Case No. 02-15662, ECF # 14.) The Debtor objected, but Judge Blackshear granted the motion, permitting Indymac "to commence or continue to foreclose its mortgage lien and proceed with its subsequent eviction process . . . ." (Case No. 02-15662, ECF # 16.) According to East 74, IndyMac rescheduled the public auction of Strawbridge's shares for July 31, 2003. Judge Blackshear later dismissed the entire case with prejudice for failure to make plan payments and provide required documentation. (Case No. 02-15662, ECF # 20.)

According to East 74, Strawbridge filed an action against IndyMac in Supreme Court, New York County, alleging that IndyMac falsified documents and targeted her in a predatory lending scheme. This action further delayed the scheduled July 31, 2003 sale of the Debtor's shares. According to East 74, on October 6, 2006—over two years after filing the complaint—the state court dismissed Strawbridge's complaint, finding that the loan was not predatory.

On December 19, 2006, just two months after the resolution of her state court action, Strawbridge filed her second bankruptcy petition, this time under chapter 11. (Case No. 06-13049.) The schedules accompanying this petition are substantially similar to those filed in this case. The schedules list similar personal property, and the same unsecured debts held by the U.S. Treasury and Verizon as listed in this instant schedules. The affidavit supplied in support of the petition weaves an extraordinary tale of illegal

3

efforts undertaken by creditors to seize the Debtor's apartment. The affidavit also clearly indicates that Strawbridge could pay her debts easily by selling some of her furniture, if her valuations are correct. Both GMAC Mortgage Corporation and 200 East 74 Owners Corp. moved to lift the automatic stay with regards to the Apartment. (Case No. 06-13049, ECF # 11, 14.) East 74 moved in the alternative to dismiss the case or have it converted to a case under chapter 7. On July 18, 2007, Judge Peck denied East 74's initial motion without issuing an opinion. (Case No. 06-13049, ECF # 18.) East 74 contends that its motion was denied because it lacked a formal appraisal of the Apartment.

East 74 renewed its motion on November 9, 2007. (Case No. 06-13049, ECF # 23.) Judge Peck granted this motion on November 30, 2007. (Case No. 06-13049, ECF # 24.) Strawbridge appealed the order lifting the automatic stay (Case No. 06-13049, ECF # 26), and filed an application for *in forma pauperis* status to proceed without paying appellate filing fees. (Case No. 06-13049, ECF # 27.) Strawbridge's *in forma pauperis* application valued her property at *$724.1 million*, including copyrights worth $700 million, various antiques worth $22 million, and the Apartment worth $2.1 million. Judge Peck denied the application, determining that it was "not a reliable or credible document because it claims that the Debtor-Appellant owns property having a total value of $724,100,000, an amount so plainly exaggerated and divorced from economic reality as to render the Application fanciful and absurd." Judge Peck continued, reasoning that "the Application is a sworn statement so lacking in substance and credibility that it should not be accepted by the Court . . . ." The district court later dismissed Strawbridge's appeal for failure to prosecute. (Case No. 06-13049, ECF # 41.)

4

Soon after the order granting the lift-stay, the U.S. Trustee moved to dismiss the case, or alternatively convert the case to case under chapter 7 as a result of Strawbridge's failure to file monthly operating reports, failure to file a plan of reorganization or a disclosure statement, and for failure to pay $1,500 in estimated U.S. Trustee fees. (Case No. 06-13049, ECF # 36.) Judge Peck granted the motion and dismissed the case on March 28, 2008. (Case No. 06-13049, ECF # 39.)

According to East 74, on February 15, 2008, IndyMac scheduled another public auction of Strawbridge's shares for March 27, 2008. East 74 maintains that just a week before the scheduling of the public auction, Strawbridge started an action against both East 74 and IndyMac in New York State Supreme Court, No. 102658/2008, requesting a temporary restraining order and seeking to stay a non-payment proceeding East 74 had previously commenced. East 74 further states that the state court referred the case to Adult Protective Services to determine whether a guardian should be appointed to assist Strawbridge. Then, according to East 74, on March 24, 2008, just three days before the rescheduled sale of Strawbridge's shares was to take place, the state court enjoined IndyMac and East 74. According to East 74, Adult Protective Services issued a notice that recommended appointment of a *guardian ad litem* for Strawbridge. The state court appointed the guardian. The case was subsequently removed to federal court, where motions to dismiss are pending. *See Strawbridge v. FDIC*, No. 09-CV-05426-CM (S.D.N.Y.).

In addition to these numerous matters, East 74 maintains that it initiated numerous non-payment proceedings against Strawbridge in 2002, 2005, and 2008 for failure to pay maintenance. In each of these instances, IndyMac paid the maintenance to protect its

5

interest in Strawbridge's shares. East 74 now claims that it has filed a new non-payment proceeding against Ms. Strawbridge for failure to pay maintenance. Strawbridge allegedly filed this bankruptcy petition to delay a trial scheduled on the matter for December 10, 2009. According to East 74, Strawbridge has failed to pay maintenance due under the lease since filing the current petition.

## DISCUSSION

Under Bankruptcy Code § 1112(b), a court may dismiss a chapter 11 case or convert it to case under chapter 7 "for cause" so long as it is in the best interests of both the creditors and the estate. 7 COLLIER ON BANKRUPTCY ¶ 1112.04. Subsection (b)(4) contains sixteen examples of events that may constitute cause. This list, however, is "not exhaustive" and courts are free to consider other factors. *See, e.g.*, *In re Ameribuild Const. Mgmt., Inc.*, 399 B.R. 129, 131 n.3 (Bankr. S.D.N.Y. 2009) (citing legislative history). Examples of cause to dismiss a chapter 11 case listed in the statute include:

1. "Substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;" 11 U.S.C. § 1112(b)(4)(A).

2. "Gross mismanagement of the estate;" 11 U.S.C. § 1112(b)(4)(B).

Courts have also dismissed chapter 11 cases when they have not been filed in good faith. *See, e.g.*, *In re Loco Realty Corp.*, No. 09-11785 (ALG), 2009 WL 2883050, at *2 (Bankr. S.D.N.Y. June 25, 2009); *In re Canbec Inv. Corp.*, 349 B.R. 915, 918 (Bankr. M.D. Fl. 2006) ("A court may dismiss a Chapter 11 case if a petition for relief was filed without good faith."); 7 COLLIER ON BANKRUPTCY ¶ 1112.07 ("the court may also dismiss a chapter 11 case for lack of good faith"). Good faith "is required to prevent fraud or abuse of the bankruptcy process." *In re Loco Realty Corp.*, 2009 Wl 2883050, at *2 (citing *In re Shar*, 253 B.R. 621, 629 (Bankr. D.N.J. 1999)). Courts consider multiple

factors when determining whether a filing was made in bad faith, including whether "the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights" and the debtor's cash flow. *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1311 (2d Cir. 1997). Chief Judge Gonzalez recently opined that "the critical test of a debtor's bad faith remains whether on the filing date there was no reasonable likelihood that the debtor intended to reorganize and whether there is no reasonable possibility that the debtor will emerge from bankruptcy." *In re Loco Realty Corp.*, 2009 WL 2883050, at *3 (quoting *In re 68 W. 127 St., LLC*, 285 B.R. 838 (Bankr. S.D.N.Y. 2002)) (internal quotation marks omitted).

The moving party has the burden of demonstrating cause for dismissal. *Id.* at *2. Bankruptcy judges have wide discretion to determine whether cause exists to dismiss a case under § 1112(b). *In re Kholyavka*, No. 08-10653DWS, 2008 WL 3887653, at *5 (Bankr. E.D. Pa. Aug. 20, 2008) (quoting H. Rep. 595, 95th Cong., 1st Sess. 405 (1977)). "Once the movant has established cause, the burden shifts to the respondent to demonstrate by evidence the unusual circumstances that establish that dismissal or conversion is not in the best interests of creditors and the estate." 7 COLLIER ON BANKRUPTCY ¶ 1112.05[1].

After a party establishes cause, a court must also examine whether dismissal or conversion of a case to case under chapter 7 is in the best interests of the creditors and estate. *Id.* at ¶ 1112.04[6]. Courts look to multiple factors to determine which action is in the best interest of the creditors and the estate. Collier identifies numerous applicable factors including:

> 1. Whether the debtor would simply file a further case upon dismissal.

7

      2. Whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests.

The Court concludes that cause exists under section 1112(b) to convert this case to a case proceeding under chapter 7. The Court concludes that Strawbridge did not file her petition in good faith. The secured creditors in this case have suffered through three different bankruptcy filing and countless state court actions in an effort to enforce their security interests. The Court concludes that each of Strawbridge's bankruptcy petitions—including the instant petition—have been filed as part of a strategic effort to frustrate the secured creditors' efforts to enforce their interests in the Apartment. *See In re C-TC 9th Ave. P'ship*, 113 F.3d at 1311 (identifying actions that demonstrate "an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights" as a factor courts should examine when determining if a petition is filed in bad faith). Nor does it appear from Strawbridge's prior unsuccessful bankruptcy filings, or her submission in opposition to East 74's motion that she has any intent to reorganize. *See In re Loco Realty Corp.*, 2009 WL 2883050, at *3 (identifying this as a "critical test" for determining a debtor's good faith).

The Court also concludes that there is a "continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" in this case. 11 U.S.C. § 1112(b)(4)(A). Strawbridge continues to flaunt her payment obligations to her secured creditors, causing continuing losses to the estate. Moreover, according to her schedules, Strawbridge's only current source of income is $961 in monthly social security payments. With this limited income, it does not appear to the Court that the Debtor will be able to cure her obligations to her creditors without surrendering the properties, a step Strawbridge clearly will not willingly take. *See* 7 COLLIER ON BANKRUPTCY ¶

8

1112.04[6][a] (observing that there must be both a "pattern of decline" and an inability to "stop the bleeding" for cause to exist under 1112(b)(4)(A)). To the extent Strawbridge may argue that she could repay her creditors by selling some of her personal property, the Court observes that Judge Peck has previously adjudged her estimate regarding the value of this property as being "exaggerated and divorced from economic reality." (Case No. 06-13049, ECF # 41.) Nor may Strawbridge finance a plan of reorganization through potential recovery on her litigation claims pending in the district court. *See In re FRGR Managing Member LLC*, 419 B.R. 576, 583–84 (Bankr. S.D.N.Y. 2009) (collecting cases and concluding that debtor could not confirm a plan of reorganization relying upon anticipated proceeds from a pending litigation).

The Court further determines that conversion of this case to a case under chapter 7 is in the best interests of the creditors. As demonstrated by Strawbridge's previous filings, it is highly likely that she will merely file a new bankruptcy petition if this case is dismissed. Where serial filings are an issue, conversion is in the best interests of the creditors. *See In re Staff Inv. Co.*, 146 B.R. 256, 259–60 (Bankr. E.D. Cal. 1992) (intimating that conversion is appropriate remedy where debtor will immediately file a new bankruptcy petition). Further, Strawbridge's misuse of the bankruptcy laws to avoid her obligations to creditors requires conversion to chapter 7 to protect the creditors. Under chapter 7 an independent trustee will be appointed to examine Strawbridge's estate and properly value and liquidate her personal property in an effort to make her creditors whole. An independent trustee could also examine the various causes of action that Strawbridge believes she has against the creditors in this case and determine whether they

9

are worth further pursuit. *See In re Ameribuild*, 399 B.R. at 134 (noting the benefits of chapter 7 trustees in examining litigation claims).

In her response to the motion, Strawbridge disputes the calculation of the amounts owed to 74 East and alleges that the secured creditors have engaged in illegal actions. Strawbridge, however, does not make any legal or factual arguments that convince this Court her case presents "unusual circumstances" warranting not converting this case to a case under chapter 7. 7 COLLIER ON BANKRUPTCY ¶ 1112.05[1] ("Courts have much discretion in making the determination as to whether there are unusual circumstances that should prevent dismissal or conversion.").

## CONCLUSION

For the reasons explained above, the case will be converted to a case under chapter 7. As East 74 has only moved in the alternative for an order vacating the automatic stay if its motion to dismiss or convert is not granted, that request for relief is moot.

**IT IS SO ORDERED.**

DATED:  March 5, 2010
        New York, New York


                                        /s/Martin Glenn
                                        MARTIN GLENN
                                        United States Bankruptcy Judge